# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | | |
|---|---|---|
| TABITHA A. RAIMBAULT, | ) | |
|     Plaintiff, | ) | |
| | ) | |
|     v. | ) | CAUSE NO.: 2:18-CV-30-JEM |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Deputy Commissioner for Operations, | ) | |
| Social Security Administration, | ) | |
|     Defendant. | ) | |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Tabitha A. Raimbault on January 22, 2018, and Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 17], filed July 2, 2018. Plaintiff requests that the decision of the Administrative Law Judge be reversed and remanded for an award of benefits or, in the alternative, for further proceedings. On August 6, 2018, the Commissioner filed a response, and on August 27, 2018, Plaintiff filed a reply.

## I. Background

On July 18, 2013, Plaintiff filed an application for supplemental security income, alleging that she became disabled on June 24, 2006. Plaintiff's applications were denied initially and upon reconsideration. On December 10, 2015, Administrative Law Judge ("ALJ") B. Lloyd Blair held a hearing at which Plaintiff and a vocational expert ("VE") testified. Plaintiff was represented by an attorney at the hearing. On January 26, 2016, the ALJ issued a decision finding that Plaintiff was not disabled.

The ALJ made the following findings under the required five-step analysis:

1.     The claimant has not engaged in substantial gainful activity since July 19, 2013, the application date.

2. The claimant has the following severe impairments: History of L5-S1 fusion, cervical spine degenerative disc disease, degenerative joint disease of the bilateral knees, carpal tunnel syndrome (CTS), osteoporosis, bipolar disorder, mood disorder, panic disorder with agoraphobia, and anxiety disorder.

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one the listed impairments in 20 CFR 404, Subpart P, Appendix 1.

4. The claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she could never use ladders, scaffolds, or ropes; only occasionally use ramps, stairs, stoop, kneel, crouch, or crawl; should avoid concentrated exposure to vibrations; never use torque, pneumatic, or power tools; frequently but not constantly handle or finger; occasionally bend, twist, or turn at the waist or the neck; should have only simple unskilled work with one, two, or three-step instructions; jobs that do not require teamwork or working in close proximity of coworkers; work that involves minimal contact and directions from a supervisor; and work requiring brief and superficial contact with the general public.

5. The claimant has no past relevant work.

6. The claimant was 44 years old, which is defined as a younger individual age 18-49, on the date the application was filed.

7. The claimant has at least a high school education and is able to communicate in English.

8. Transferability of job skills is not an issue because the claimant does not have past relevant work.

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

10. The claimant has not been under a disability, as defined in the Social Security Act, since July 19, 2013, the date the application was filed.

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner. did not take jurisdiction of the claim, leaving the ALJ's decision the final decision of the Commissioner.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## II. Standard of Review

The Social Security Act authorizes judicial review of the final decision of the Agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d

3

664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

### III. Analysis

Plaintiff argues that the ALJ's decision should be remanded because the ALJ erred in weighing the medical opinions, in determining Plaintiff's RFC, and in evaluating Plaintiff's subjective symptoms.

Dr. Hobbins, one of Plaintiff's treating physicians, completed a medical source statement addressing the impact of Plaintiff's impairments on her physical ability to perform work-related activities. AR 1125-28. He opined that Plaintiff could walk only two blocks, could sit for less than

4

two hours total and stand and walk for less than two hours total in an 8-hour work day, could sit or stand for only 10 minutes at a time, needed to walk for five minutes every 20 minutes during the work day, needed frequent unscheduled breaks during a work day, would be off task for more than 25% of the work day, and could never grasp, turn, or twist objects, perform fine finger manipulations, or reach in front or overhead with her arms. The ALJ gave little weight to this opinion "as the cervical MRI and objective examination findings do not support his assessed functional limitations." AR 44.

"[A] judge should give controlling weight to the treating physician's opinion as long as it is supported by medical findings and consistent with substantial evidence in the record." *Kaminski v. Berryhill*, 894 F.3d 870, 874 (7th Cir. 2018) (citing 20 C.F.R. § 404.1527(c)(2); *Gerstner v. Berryhill*, 879 F.3d 257, 261 (7th Cir. 2018)); *see also Gudgel*, 345 F.3d at 470; *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007). If the ALJ declines to give a treating source's opinion controlling weight, he must still determine what weight to give it according to the following factors: the length, nature, and extent of the physician's treatment relationship with the claimant; whether the physician's opinions were sufficiently supported; how consistent the opinion is with the record as a whole; whether the physician specializes in the medical conditions at issue; and other factors, such as the amount of understanding of the disability programs and their evidentiary requirements or the extent to which an acceptable medical source is familiar with other information in the claimant's case. 20 C.F.R. § 416.927(c)(2)(i)-(ii), (c)(3)-(6). Furthermore, "whenever an ALJ does reject a treating source's opinion, a sound explanation must be given for that decision." *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011).

Here, the ALJ's reason for rejecting Dr. Hobbins's opinion does not comply with the standard as set forth in the regulations. The ALJ only found that an MRI and objective examination findings "do not support" the opinion. In order to deny controlling weight to a treating physician's opinion, the regulations require either that the opinion is unsupported or that the opinion is inconsistent with substantial evidence in the record.

First, the ALJ only found that certain pieces of evidence—an MRI and "objective examination findings"—did not support Dr. Hobbins's opinion. The ALJ did not find that Dr. Hobbins did not support his opinion or that no evidence supports the opinion. The record contains evidence that Plaintiff has difficulty shifting from sitting to standing, AR 452, joint pain, muscle pain, and joint stiffness, AR 482, significant crepitus of both knees, AR 734, complaints of widespread pain, AR 735, reduced range of motion, AR 452, 1061-62, prior fusion surgery, AR 434, and steroidal injections, AR 1140, 1148. Further, other medical professionals opined that Plaintiff experiences severely limiting pain, AR 1029, and cannot engage in prolonged sitting or standing, AR 1030.

Second, a failure to support is not equivalent to inconsistency. For example, normal findings on a chest x-ray may not support a diagnosis of athlete's foot, but the x-ray is not inconsistent with that diagnosis. That is, a person could have both athlete's foot and normal chest x-ray findings. Though Defendant asserts that the ALJ's previous discussion of objective examination findings and the cervical MRI show this evidence to be inconsistent with Dr. Hobbins's opinion, the ALJ made no such finding of inconsistency. Because the ALJ applied an erroneous legal standard in assigning weight to Dr. Hobbins's November 2015 opinion, remand is required.

As an additional matter, the ALJ considered Plaintiff's work history multiple times in coming to his decision. *See* AR 32, 33, 40. The Court is concerned that the ALJ's reliance on of Plaintiff's work history is misplaced in light of conflicting evidence in the record. The ALJ recounted that Plaintiff "worked as a hairdresser since 1998, as a cashier at Kmart in 2011 (earning $7.25 per hour, 30 hours per week), and at a deli in 2013 (earning $7.75 per hour, 30 hours per week)." AR 30 (citing hearing testimony; Exhibit 1E at 4). The exhibit cited is consistent with the ALJ's statement, though it also reports that Plaintiff earned $32 per day as a hairdresser on page 5. At the hearing, Plaintiff testified that she has "been a hairdresser pretty much since 1998," though when asked what her last job was, she answered that it was the deli job in 2013. AR 57.

Plaintiff's Detailed Earnings Query shows a different picture of Plaintiff's work history. For 2011, Plaintiff's yearly total of wages is reported as $417.82, all from Kmart Corporation. Assuming that Plaintiff was working 30 hours per week at $7.25 per hour as recorded in the record and noted by the ALJ, Plaintiff worked fewer than two weeks at Kmart. AR 189. Similarly, her 2013 yearly wages are reported as $271.50, all earned from SVT LLC, which equals a little more than one week, assuming 30 hours per week at $7.75 per hour at the Strack and Van Til deli department. *Id.* Though Plaintiff stated that she had been a hairdresser since 1998, there is no record of earnings for years 2007, 2009, 2010, 2012, 2014, and 2015. AR 191. The only reported earnings for 2011 and 2013 are noted above. In 2008, Plaintiff has reported earnings of a total of $32.50 from Salon J Incorporation. AR 189. In summary, the earnings record appears to show, from 2007-2015, approximately one day of work at Salon J, two weeks of work at Kmart, and one week of work at Strack and Van Til.

The record of Plaintiff working from February 20, 2013, to July 24, 2013, for 30 hours per week may be the result of a scrivenor's error. Plaintiff elsewhere states that she worked at Strack and Van Til in February 2013 for one week. *See* AR 270. This statement of working one week appears to be consistent with the earnings report.

Ultimately, it is not for the Court to resolve this conflict in the record. That is left to the ALJ. However, the ALJ did not provide any indication that he was aware of the conflict and resolved it. There is no logical bridge here for the Court to follow. *O'Connor-Spinner*, 627 F.3d at 618. Without this bridge, the unaddressed conflict in the evidence casts considerable doubt on the ALJ's reliance on Plaintiff's work history. On remand, the ALJ is directed to engage with this conflicting evidence, asking additional questions of Plaintiff if warranted, and reconcile the evidence by written discussion in his decision before using it to support a finding of nondisability.

The implications of the ALJ's reliance on this unresolved conflict persist throughout the opinion. Plaintiff's work history is discussed in the ALJ's determination of whether Plaintiff meets a Listing at the third step of the sequential process, the crafting of Plaintiff's physical RFC, and the evaluation of her subjective symptoms. Therefore, in light of the need to resolve the conflict and the necessity of remand as already noted, the Court declines to further address Plaintiff's additional arguments.

Plaintiff requests that the Court reverse the Commissioner's decision and remand for an award of benefits. However, an award of benefits is not proper when there remain outstanding factual issues, *Briscoe*, 425 F.3d at 356, and the record does not yet support a finding that Plaintiff is disabled. *Allord v. Asture*, 631 F.3d 411, 417 (7th Cir. 2011). Therefore, remand for further proceedings, and not for an award of benefits, is proper.

**IV. Conclusion**

For the foregoing reasons, the Court hereby **GRANTS** the Opening Memorandum [DE 19], **REVERSES** the final decision of the Commissioner of Social Security, and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 14th day of February, 2019.

s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc: All counsel of record